*Waterkeeper Alliance, Inc. v. Maryland Dep't of Agriculture*, No. 87 September Term, 2013

**CIVIL PROCEDURE – FINAL JUDGMENT – CONSOLIDATED CASES –**
The consolidation of two actions required a joint disposition to achieve finality of judgment because not only did the Circuit Court intend to resolve both actions in a joint disposition, it was compelled to do so given the interconnectedness of the actions, the nature of the claims, and Maryland's policy disfavoring piecemeal appeals.

**CIVIL PROCEDURE – FINAL JUDGMENT – UNRESOLVED CLAIMS –**
The Circuit Court did not resolve Plaintiff's claim that Md. Code (1973, 2007 Repl. Vol.), Agriculture Art. § 8-801.1(b)(2) is unconstitutional in either the order dated 10 February 2009 or the order dated 14 July 2011, so the orders constituted neither alone nor collectively a final judgment. The 2011 order, therefore, was not appealable immediately because a party may appeal generally an order only after it is entered as a final judgment.

**CIVIL PROCEDURE – FINAL JUDGMENT – APPELLATE ENTRY OF FINAL JUDGMENT –**
Court of Appeals may not certify, for purposes of legitimating for appeal, pursuant to Maryland Rule 8-602(e)(1)(C), an order that adjudicates less than all of the claims in a consolidated case where the subsequent adjudication of a claim that was unresolved at the time of certification may render ultimately the appeal of the certified claim moot. Such a certification would defy logic and contradict Maryland's policy disfavoring piecemeal appeals.

Circuit Court for Anne Arundel County
Case No. C-08-134331
Argued: 5 March 2014

IN THE COURT OF APPEALS OF
MARYLAND

No. 87

September Term, 2013

WATERKEEPER ALLIANCE, INC. ET
AL.

v.

MARYLAND DEPARTMENT OF
AGRICULTURE ET AL.

Barbera, C.J.,
Harrell,
Battaglia,
Adkins,
Rodowsky, Lawrence F.
        (Retired, Specially
        Assigned)
Raker, Irma S.
        (Retired, Specially
        Assigned)

JJ.

Opinion by Harrell, J.

Filed: July 18, 2014

*"There's many a slip 'twixt' the cup and the lip."*

— Old English proverb

Although the parties have spent considerable time presenting, for our benefit, the substantive law pertaining to the merits of the case, none ensured that the procedural posture of the appeal was proper. For the forthcoming reasons, this Court must dismiss the present appeal for lack of jurisdiction.

## I.  BACKGROUND

The controversy giving rise to the present appeal began in the summer of 2007, when Waterkeeper Alliance, Inc. ("WKA") submitted to the Maryland Department of Agriculture ("MDA") a pair of requests for certain public records. In those requests, WKA sought to obtain the specific nutrient management plans ("NMPs") of various private farming operations on Maryland's Eastern Shore, along with any supporting documentation related to the NMPs. WKA submitted the requests pursuant to the Maryland Public Information Act ("PIA"), Maryland Code (1984, 2009 Repl. Vol.), State Government Article, §§ 10-601 to 10-628,[1] which allows generally for the inspection and

---

[1] While this appeal was pending, the Maryland General Assembly passed legislation, as part of a Code revision effort, creating a new article of the Maryland Code. The new article, titled General Provisions, includes, *inter alia*, the Maryland Public Information Act in its entirety. Although the General Assembly changed some language of the PIA in the process of converting its provisions from the State Government Article to the General Provisions Article, no substantive changes were made to the sections at issue in this appeal. *See* 2014 Md. Laws Ch. 94 (H.B. 270). The creation of the General Provisions Article will take effect on 1 October 2014. *Id.* For present purposes, we refer to the provisions of the PIA by their codification references in the State Government Article. For future reference, the PIA will appear at Maryland Code, General Provisions Article, §§ 4-101 to 4-601.

receipt of copies of public records. The MDA denied WKA's requests, on the basis that

§ 10-615(2)(i)[2] of the PIA exempted disclosure of the NMP inspection records, citing

Md. Code (1973, 2007 Repl. Vol.), Agriculture Art., § 8-801.1(b)(2)[3] as the operative

excepting statute.

On 4 February 2008, WKA and eight other environmental advocacy groups filed

an action ("WKA action") against the MDA and three of its executives in the Circuit

Court for Anne Arundel County ("Anne Arundel Circuit Court") to obtain the records

WKA sought.[4] WKA's Complaint alleged four legal grounds, which it labeled "Causes

of Action," upon any of which the court should order the MDA to produce the records:

> [1] On its Face, Md. Code Ann., Agric. § 8-801(b)(2) [sic] Constitutes a
> Violation of the Rights Conferred on Citizens by Article 6 of Maryland's
> Declaration of Rights . . . .

---

[2] Section 10-615(2)(i) states:

> A custodian shall deny inspection of a public record or any part of a public
> record if. . . (2) the inspection would be contrary to: (i) a State statute; . . .

[3] Section 8-801.1(b) of the Agriculture Article states:

> (1) A summary of each nutrient management plan shall be filed and
> updated with the Department [of Agriculture] at a time and in a form that
> the Department requires by regulation.
>
> (2) The Department shall maintain a copy of each summary for 3 years in a
> manner that protects the identity of the individual for whom the nutrient
> management plan was prepared.

[4] The parties who joined in the WKA action were Assateague Coastkeeper, Baltimore
Harbor Waterkeeper, Inc., Lower Susquehanna Riverkeeper, Patuxent Riverkeeper,
Potomac Riverkeeper, Inc., Severn Riverkeeper, South Riverkeeper, and West/Rhode
Riverkeeper, Inc.

[2] Md. Code Ann., Agric. § 8-801(b)(2) [sic] is a "Special Law" That Violates Article III, § 33 of the Maryland Constitution . . . .

[3] Md. Code Ann., Agric. § 8-801(b)(2) [sic] Constitutes a Violation of the Rights Conferred on Citizens by the First Amendment to the U.S. Constitution . . . .

[4] The Denial of Access to Nutrient Management Plans Violates the Maryland Public Information Act.

To remedy the alleged violations, the Complaint pressed six distinct, but at times overlapping, prayers for relief:

The Waterkeepers pray that this [c]ourt:

(1) declare[] Md. Code Ann., Agric. § 8-801(b)(2) [sic] unconstitutional under the Maryland and United States Constitutions;

(2) enjoin[] the defendants from withholding the public records sought by Waterkeeper;

(3) order[] the defendants to produce the public records improperly withheld;

(4) order[ the] defendants to pay actual and punitive damages for the failure to disclose public records;

(5) order[ the] defendants to pay reasonable attorney fees and other litigation costs, including attorney and expert fees; and

(6) grant[] other relief as the Court deems appropriate.

Following WKA's filing of the Complaint, the parties engaged in discussions as to what specific information the MDA might be required to disclose. No apparent settlement was reached, and the case remained "live." After the discussions concluded, WKA filed on 16 May 2008 a third request with the MDA for information, which the MDA approved tentatively.

On 18 July 2008, before the MDA could fulfill WKA's third PIA request, the Maryland Farm Bureau, Inc. ("MFB") and three anonymous farmers filed a related action ("MFB action I") against the MDA in the Circuit Court for Dorchester County ("Dorchester Circuit Court"). MFB alleged in its Complaint that the "[MDA] received a request pursuant to the Maryland [PIA] for the disclosure of certain [NMP] information[,]. . . [including] all [NMPs], plan summaries, and records of inspection or enforcement against poultry operations located in Dorchester, Queen Anne's Somerset, Talbot, Wicomico, and Worcester Counties." The Complaint asserted two counts—one alleging grounds for a declaratory judgment as to the scope and temporal limitations of Agric. § 8-801.1(b)(2),[5] and the other alleging grounds for preliminary and permanent injunctions to enjoin the MDA from disclosing confidential information. MFB identified four prayers for relief:

> [1] A declaration that Agric. § 8-801.1(b)(2) requires that: (a) the Department maintain nutrient management plan summaries for three years; and (b) the Department maintain all nutrient management plan information in a manner that protects the identity of the individual for whom the nutrient management plan was prepared, without any time limitation;
>
> [2] Preliminary and permanent injunctive relief preventing the Department from disclosing confidential nutrient management information identifying the Farmers or other members of the Maryland Farm Bureau;
>
> [3] Award of plaintiffs' attorney's fees and costs in pursuing this litigation;
>
> [4] Such other and further relief as the Court deems appropriate.

---

[5] From this point on in this opinion, Md. Code (1973, 2007 Repl. Vol.), Agriculture Art. § 8-801.1(b)(2) will be referred to as "Agric. § 8-801.1(b)(2)."

-4-

In response to the Scylla and Charybdis effect of the actions against it, the MDA filed a motion in the Dorchester Circuit Court requesting a transfer of MFB action I to the Anne Arundel Circuit Court. On 2 September 2008, the Dorchester Circuit Court granted the MDA's motion. After MFB action I was transferred to the Anne Arundel Circuit Court, the MDA filed in that court a Motion to Consolidate the WKA and MFB actions.

While the Motion to Consolidate was pending, MFB filed a Motion for Summary Judgment with respect to MFB action I, Anne Arundel Circuit Court Case No. 02-C-08-134331, stating that MFB is "entitled to summary judgment declaring the proper interpretation of Agric. § 8-801.1(b)(2)." The MDA filed a Cross-Motion for Summary Judgment in MFB action I. On 17 October 2008, the Anne Arundel Circuit Court granted the MDA's Motion to Consolidate. The court consolidated the dockets of the WKA and MFB actions, and designated MFB action I, Case No. 02-C-08-134331, as the "lead case."[6] WKA filed then a Motion in Opposition to MFB's Motion for Summary Judgment and in Support of the MDA's Cross-Motion for Summary Judgment.

The parties addressed the court on the summary judgment motions and oppositions during a hearing on 8 December 2008 ("the 2008 hearing"). Two months later, the trial judge issued a Memorandum Opinion and, on 10 February 2009, issued an Order ("2009 Order") in which it granted the MDA's Cross-Motion for Summary Judgment, denied MFB's Motion for Summary Judgment, including the following language in the order:

---

[6] From that point forward, all documents filed regarding either consolidated case was recorded on the docket for the lead case.

DECLARED, that the Maryland Department of Agriculture must disclose Nutrient Management Plan Summaries that have been maintained by the Department of Agriculture for 3 years or less pursuant to the Public Information Act with the limitation that the Maryland Department of Agriculture must redact any and all information from the Nutrient Management Plan Summaries that may allow for the identification of the individual for whom the nutrient management plan was prepared; and it is further

DECLARED, that the Maryland Department of Agriculture must disclose Nutrient Management Plan Summaries that have been maintained by the Department of Agriculture for more than three years without any redaction of identifying information unless failure to redact identifying information from Nutrient Management Plan Summaries that have been held for more than three years would allow for the identification of the individual for whom the Nutrient Management Plan was prepared with respect to those Nutrient Management Plan Summaries that have been maintained by the Maryland Department of Agriculture for three years or less; and it is further

DECLARED, that the Maryland Department of Agriculture must redact any information from any documents subject to disclosure under the Public Information Act that are related to Nutrient Management Plans if such information would allow for the identification of the individual for whom the Nutrient Management Plan was prepared with respect to those Nutrient Management Plan Summaries that have been maintained by the Maryland Department of Agriculture for three years or less.

No further litigation activity was reflected on the docket immediately following entry of the 2009 Order.

Over a year later, however, on 2 April 2010, the MDA received another PIA request regarding specific NMP information, this time from Assateague Coastkeeper ("Coastkeeper"), a co-plaintiff in the WKA action. Coastkeeper requested essentially the

same information that WKA sought in its PIA requests and the resulting litigation.[7] Unbeknownst to Coastkeeper, the MDA and MFB engaged in communications to determine which information might be disclosed to Coastkeeper. The MDA told MFB that, among other things, it intended to provide Coastkeeper with an electronic spreadsheet containing information regarding the MDA inspections and enforcement actions involving MFB members. MFB asked the MDA to delay releasing the spreadsheet so that it could "develop a legal strategy" to prevent disclosure of any confidential information within the spreadsheet.

On 13 September 2010, after the MDA informed Coastkeeper of its plans to further delay the release of information, MFB filed a Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief ("MFB action II"), along with a Motion for Temporary Restraining Order and Preliminary Injunction, against the MDA in the Circuit Court for Worcester County ("Worcester Circuit Court") seeking to prevent the MDA from disclosing, without redactions, the spreadsheet. The following day, that court issued a Temporary Restraining Order preventing the MDA from "disclosing any information concerning nutrient management plans that identifies *the* person for whom *the* plan was prepared . . . ." The MDA responded with a Motion for Transfer of Venue to send MFB action II to the Anne Arundel Circuit Court.

---

[7] A few months later, following some discussion, Coastkeeper tendered to the MDA an amended request narrowing somewhat the information sought in its initial request. The amendments are not pertinent to our disposition of this appeal.

On 22 September 2010, Coastkeeper filed a "Petition for Contempt" in Anne Arundel Circuit Court Case No. 02-C-08-134331. Two weeks later, on 4 October 2010, MFB action II was transferred to the Anne Arundel Circuit Court, with MFB's consent, and assigned to the same trial judge who issued the 2009 Order in the consolidated Case No. 02-C-08-134331. On 2 May 2011, the Anne Arundel Circuit Court dismissed, with prejudice, MFB action II. On 9 May 2011, MFB filed in Anne Arundel Circuit Court Case No. 02-C-08-13433 a Motion for Clarification of Memorandum Opinion and Order Dated February 10, 2009, asking the judge to clarify the 2009 Order in light of the evolving developments in the parties' disputes arising after entry of the 2009 Order.[8]

On 14 July 2011, the court issued an Order ("2011 Order") granting MFB's Motion for Clarification and declaring how the 2010 PIA request was controlled by the 2009 decision. The 2011 Order read, in pertinent part:

> ORDERED and DECLARED that the Maryland Department of Agriculture must redact any information from any documents subject to disclosure under the Public Information Act that are related to Nutrient Management Plans if such information would allow for the identification of the individual for whom the Nutrient Management Plan was prepared with respect to those Nutrient Management Plan Summaries that have been maintained by the Maryland Department of Agriculture for three years or less. In applying this standard, the Maryland Department of Agriculture must redact only that information which would allow the reader to link a specific individual with a specific nutrient management plan; and it is further:

---

[8] During oral argument, counsel for MFB explained that the trial judge of the Anne Arundel Circuit Court informed MFB that he was going to dismiss MFB action II, and encouraged MFB, in lieu of maintaining that action, to file a Motion for Clarification of the judge's 2009 Order in consolidated Case No. 02-C-08-134331 as a substitute for MFB action II.

-8-

ORDERED and DECLARED that, as applied to the spreadsheet of enforcement information that the Maryland Department of Agriculture will provide to the Assateague Coastkeeper, the Maryland Department of Agriculture must redact the following fields of information in their entirety, as reflected in Exhibit 2 to the Department of Agriculture's Response: ["Visit Type," "Operation Type," and "Total Farmed Acres" fields.] In addition, the Maryland Department of Agriculture must review the following fields of information and redact any plan information that could be sued to create a linkage between a specific individual and a specific nutrient management plan: ["Compliance Comments" and "Comments" fields;] and it is further:

ORDERED and DECLARED that, in redacting identifying information from nutrient management plan summaries or annual implementation reports, the Maryland Department of Agriculture must redact the entries for name, address, signature, and unique identification number, as reflected in Exhibit 3 to the Department of Agriculture's Response.

In addition, the court issued a second Order, on 5 August 2011, stating that no further proceedings were necessary in the consolidated case and that "this case was to be considered closed for statistical purposes and no future hearings are needed."

WKA noted an appeal of the 14 July 2011 Order to the Court of Special Appeals. In a reported opinion, the intermediate appellate court affirmed the judgment of the Anne Arundel Circuit Court. *Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 211 Md. App. 417, 65 A.3d 708 (2013).[9] WKA filed a Petition for Writ of Certiorari in this Court,

---

[9] The jurisdictional basis upon which we dismiss the present appeal was not discussed, considered, or decided in the Court of Special Appeals, which rendered its opinion on the merits. Because we conclude ultimately that the Court of Special Appeals lacked jurisdiction as well to reach the merits of WKA's appeal, we need not discuss here the details of the intermediate appellate court's conclusions.

which we granted on 20 September 2013. *Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 434 Md. 311, 75 A.3d 317 (2013).[10]

During oral arguments, a member of the Court raised *sua sponte* the question of whether the 2009 Order was an enrolled final judgment, and, consequently, whether the Anne Arundel Circuit Court's act of issuing the 2011 Order to clarify and revise its 2009 Order was in contravention of the court's revisory powers pursuant to Maryland Rule 2-535.[11] No party had briefed this issue prior to oral arguments. After oral argument, MFB submitted a supplemental letter-brief to the Court, arguing that the restrictions of Rule 2-535 did not apply because the 2009 Order did not qualify as a final judgment by reason of

---

[10] WKA framed the following questions in its Petition:

> I. Did the Court of Special Appeals err in broadly interpreting an exemption to disclosure under the Maryland Public Information Act, where such exemptions must be construed narrowly and in favor of disclosure?
>
> II. Did the Court of Special Appeals err in holding that Agriculture Article § 8-801(b)(2) applies to all types of nutrient management records maintained for any period of time where the plain language expressly applies only to nutrient management plan summaries maintained by the Maryland Department of Agriculture for three years or less?
>
> III. Did the Court of Special Appeals err in deferring to the Maryland Department of Agriculture's interpretation of Agriculture Article § 8.801(b)(2), where that expansive interpretation conflicts with the narrowly-tailored exemption to disclosure provided by the plain language of the statute?

[11] Although no party raised previously any jurisdictional challenges, this Court is permitted to raise jurisdictional questions *sua sponte*. *Stachowski v. State*, 416 Md. 276, 285, 6 A.3d 907, 912 (2010).

-10-

the fact that some of the issues from the WKA action remained pending.[12]  Additionally, MFB suggested in a supplemental brief that the 2011 Order is a final and appealable judgment because, after issuing the 2011 Order, the Circuit Court ordered that the consolidated case be closed.  Therefore, according to MFB, the merits of the 2011 Order are before this Court properly.

## II. ANALYSIS

To determine whether this appeal is before this Court properly, we must address first the finality of the 2009 Order in order to determine whether the Anne Arundel Circuit Court had jurisdiction to issue the 2011 Order.  If the 2009 Order was a final judgment, then MFB's Motion for Clarification of that Order would have been subject to the temporal and other restrictions of post-judgment motions under Rule 2-535.[13] Maryland Rule 2-535 states:

> (a) **Generally.**  On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the

---

[12] As the only support for its assertion that the 2009 Order was not a final judgment, MFB urged us to compare the portion of the record containing the WKA complaint to the portion of the record containing the 2009 Order.  We assume from this encouragement that MFB's position is that the lack of adjudication in the 2009 Order of all of the claims in the WKA Complaint prevents that Order from constituting a final judgment.

13 The content of Rule 2-535 is also codified in Md. Code (1973, 2013 Repl. Vol.) Courts and Judicial Proceedings Art. § 6-408, which states:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment.  After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534 [Motion to Alter or Amend a Judgment].

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

We note that Rule 2-535 is applicable only to final judgments. *See Quartertime Video & Vending Corp. v. Hanna*, 321 Md. 59, 65, 580 A.2d 1073, 1076 (1990) (per curiam). Thus, non-final orders are "subject to revision . . . without regard to Rule 2-535." *Albert W. Sisk & Son, Inc. v. Friendship Packers, Inc.*, 326 Md. 152, 159, 604 A.2d 69, 73 (1992). In sum, if the 2009 Order was a final judgment, the Anne Arundel Circuit Court lacked the authority to revise that Order more than two years later in July 2011, absent proof of fraud, mistake, or irregularity—none of which grounds have been alleged here. Conversely, if the 2009 Order was not a final judgment, the Anne Arundel Circuit Court had the authority in 2011 to revise the 2009 Order without regard to the restrictions of Rule 2-535.

For reasons stated *infra* in Part II.B., we agree with MFB that the 2009 Order was not a final judgment, and, thus, Rule 2-535 does not apply. We disagree, however, with MFB's follow-on suggestion that the 2011 Order was a final judgment. As we discuss in detail *infra* in Part II.C., the 2011 Order, like the 2009 Order, did not resolve all of the claims before the trial court. Because none of the immediate appealability exceptions to the requirement of a final judgment are applicable to the 2011 Order, it was not an appealable judgment. Accordingly, we lack jurisdiction to review the merits of this

appeal (as did the Court of Special Appeals), and, therefore, the appeal must be dismissed, without reaching the merits.

## A. Applicable Law Concerning Final Judgments.

"The appellate jurisdiction of the courts of this State is delimited by statute." *Harris v. David S. Harris, P.A.*, 310 Md. 310, 314, 529 A.2d 356, 358 (1987). Maryland law provides that a party has the right to seek appeal when there is entry of a final judgment.[14] Md. Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Art. § 12-301; *Quillens v. Moore*, 399 Md. 97, 116, 923 A.2d 15, 26 (2007). Conversely, a party cannot appeal ordinarily a judgment that is not final. *Nnoli v. Nnoli*, 389 Md. 315, 324, 884 A.2d 1215, 1220 (2005). Requiring cases to have reached final judgment before permitting appeal reflects Maryland's long-established policy against piecemeal appeals. *See, e.g.*, *Medical Mut. Liability Ins. Soc. of Maryland v. B. Dixon Evander and Assocs.* (*Evander*), 331 Md. 301, 313, 628 A.2d 170, 176 (1993) ("[Reviewing an order with unresolved claims] is clearly contrary to the policy against piecemeal appeals."); *Frey v. Frey*, 298 Md. 552, 555-56, 471 A.2d 705, 707 (1984) ("The policy underlying this rule is that piecemeal appeals are disfavored.").

An order will constitute a final judgment if the following conditions are satisfied: (1) "it must be intended by the court as an unqualified, final disposition of the matter in controversy;" (2) "it must adjudicate or complete the adjudication of all claims against all parties;" and (3) "the clerk must make a proper record of it" on the docket. *Rohrbeck v.*

---

[14] Exceptions to this requirement are discussed *infra* in Part II.C.

*Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989); *see also* Md. Rule 2-601;[15] Md. Rule 2-602(a)(1). In other words, for an order to qualify as a final judgment, it must adjudicate each and every claim and be reflected in a docket entry. *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 565, 989 A.2d 210, 216 (2010); *see also Estep v. Georgetown Leather Design*, 320 Md. 277, 287, 577 A.2d 78, 82 (1990) (holding that the viability or mootness of a claim bears no relevance to whether a judgment is final); *Case v. Comptroller*, 219 Md. 282, 288, 149 A.2d 6, 9 (1959) (requiring the court to release declarations, upon request of declaratory judgment, on each of the issues raised in the action before a final judgment could be entered). The language of Maryland Rule 2-602 emphasizes this requirement:

> (a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates *fewer than all* of the claims in an action . . . or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
>
>> (1) is *not a final judgment*;
>> (2) *does not terminate the action* as to any of the claims or any of the parties; and
>> (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

---

[15] Maryland Rule 2-601 states:

> (a) **Prompt Entry – Separate document.** Each judgment shall be set forth on a separate document . . . .
>
> (b) **Method of Entry – Date of judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket or on a docket within the file . . . .

Md. Rule 2-602(a) (Emphasis added).

"A 'claim' . . . is defined as a 'substantive cause of action' that encompasses all rights arising from common operative facts." *Schuele*, 412 Md. at 568, 989 A.2d at 218 (Citations omitted). Alternative legal theories and differing prayers for relief do not constitute separate "claims" so long as they arise from a single asserted legal right. *See East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343, 346 (1982); *see also Cnty. Comm'rs for St. Mary's Cnty. v. Lacer*, 393 Md. 415, 426, 903 A.2d 378, 385 (2006) (quoting *Evander*, 331 Md. at 313, 628 A.2d at 176) ("[O]ur cases have made it clear that the disposition of an entire count or the ruling on a particular legal theory does not mean, in and of itself, that an entire 'claim' has been disposed of." (Citations omitted)). Thus, for a court to adjudicate completely a particular claim, each legal theory and non-collateral prayer for relief within that claim must be resolved. *See Huber v. Nationwide Mut. Ins. Co.*, 347 Md. 415, 422, 701 A.2d 415, 418 (1997).

Assessing whether all claims have been adjudicated fully may be accomplished generally by comparing all of the claims raised in the complaint with all of the claims resolved in the court's order. *See Lacer*, 393 Md. at 426-27, 903 A.2d at 385. In certain scenarios, however, where two or more actions are consolidated into a single case, introducing various claims in multiple complaints, this assessment may not be so straightforward or the result apparent.

When multiple actions are consolidated into a single case, the trial court has discretion in determining whether "joint or separate . . . judgments be entered." Md. Rule

2-503(a). Where, as in the present case, the court does not make explicit whether it intended to resolve the consolidated case in joint or separate judgments, we must determine from the record and the applicable law whether the consolidated action should be treated as one case or multiple cases. In *Yarema v. Exxon Corp.*, 305 Md. 219, 236, 503 A.2d 239, 248 (1986), we stated: "[U]nless the trial court *clearly intends that a joint judgment be entered* disposing of all cases simultaneously, consolidated cases are not to be treated as a single action for purposes of Rule 2-602; instead, each one of the cases is to be treated as a separate action." (Emphasis added); *see also* Md. Rule 2-503(a).[16] In *Yarema*, four separate tort actions were filed in the Circuit Court for Baltimore County by multiple plaintiffs against Exxon Corporation and various other defendants. *Yarema*, 305 Md. at 221-22, 503 A.2d at 240. On a motion filed by one of the defendants, the trial court consolidated the actions into a single case, for judicial efficiency, although maintaining separate dockets and entries for each action. *Yarema*, 305 Md. at 222-23, 503 A.2d at 240-41. We held that, because the trial court intended to direct the entry of judgments for each action separately, an order as to one of the consolidated cases could

---

[16] Md. Rule 2-503(a) states:

> (1) When permitted. When actions involve a common question of law or fact or a common subject matter, the court, on motion or on its own initiative, may order a joint hearing or trial or consolidation of any or all of the claims, issues, or actions. . . .

> (2) Verdict or judgment. In the trial of a consolidated action, the court may direct that joint or separate verdicts or judgments be entered.

-16-

be treated as a final judgment, despite unresolved issues in the other cases. *Yarema*, 305 Md. at 240, 503 A.2d at 249-50.

### B. The 2009 Order Was Not a Final Judgment.

Determining the finality of the 2009 Order rests in part on the effect of the consolidation of the WKA action and MFB action I into a single case. If the actions do not require a joint disposition, then the finality of the 2009 Order would be contingent on the whether the 2009 Order resolved completely the claim in the MFB Complaint.[17] *See Yarema,* 305 Md. at 236, 503 A.2d at 248. The circumstances of the consolidation in the present case differ significantly, however, from those in *Yarema*. For the purpose of analyzing the finality of the 2009 Order, we conclude not only that the trial judge intended to resolve both actions in a joint disposition, we are convinced that he was compelled to do so, given the interconnectedness of the actions, the nature of the claims, and Maryland's policy disfavoring piecemeal appeals.[18]

---

[17] Because all of MFB's counts and prayers for relief relate to a single legal right, MFB's complaint consists of only one "claim" for purposes of Rule 2-602. *See East v. Gilchrist*, 293 Md. 453, 459-60, 445 A.2d 343, 346 (grouping a request for declaratory judgment on the validity of a statute and injunctive relief for enforcement of the statute into a singular claim for purposes of Rule 2-602).

[18] If this were not the case, the finality of the 2009 Order would not be affected by the pending constitutional claim in the WKA action. As a result, the 2009 Order would have constituted a final judgment resolving MFB's substantive claim, and its revision in 2011 would have been subject to the restrictions of Rule 2-535. MFB's request for attorney's fees could not affect the finality of the 2009 Order. *See Blake v. Blake*, 341 Md. 326, 337-38, 670 A.2d 472, 478 (1996) (finding that the pending claims for attorney fees were collateral to the merits, where they were not pursuant to a contract, and, thus, did not preclude an otherwise complete order from being a final judgment). As there was no evidence presented of fraud, mistake, or irregularity, the 2009 Order would constitute an

(continued…)

-17-

First, the trial judge recognized that the outcomes of the two actions were meaningfully interdependent. If WKA prevailed on its claim that Agric. § 8-801.1(b)(2) is unconstitutional, MFB's claim requesting a declaration interpreting that statute would be moot as the interpretation sought was not one amenable to a judicial gloss such as to save it from the unconstitutionality claim. The Anne Arundel Circuit Court judge appeared to recognize this during the 2008 hearing when he asked WKA about its constitutional claim[19] and how that claim could affect his decision as to MFB's claim. Unfortunately, counsel for WKA was not prepared to address the constitutional claim at that time, and neither the judge nor the parties discussed that claim on the record again prior to the present appeal. The judge's inquiry demonstrates, however, some appreciation that a joint disposition resolving both of the claims would be necessary to put effectively the parties out-of-court. The practicality of deciding these particular actions together implores the judge to resolve both in a single disposition: it defies logic and offends greatly Maryland's policies favoring judicial efficiency to allow one claim to

_____

(…continued)

enrolled judgment, which could not be revised. *See* Md. Rule 2-535. This Court would be obliged to dismiss the appeal, vacate the intermediate appellate court's opinion, and remand the case back to the Court of Special Appeals with directions to vacate the 2011 Order.

[19] The judge asked specifically about WKA's assertion in its third "Cause of Action" that Agric. § 8-801(b)(2) violates the First Amendment of the United States Constitution. Pursuant to our discussion of what constitutes a "claim," *see supra* Part II.A., we conclude that each of WKA's first three "Causes of Action" alleged an alternative legal theory for invalidating Agric. § 8-801(b)(2) on a constitutional ground, which embody collectively a single constitutional claim for final judgment analysis purposes.

be appealed when later disposition of an unresolved claim in the same consolidated case could render the first adjudication moot.

Second, upon granting the motion to consolidate the actions, the judge was well aware that the respective plaintiffs in the two actions presented countervailing requests with interdependent claims that were part of the same action from the start. In *Yarema*, the Court consolidated multiple distinct cases for the purposes of efficiency in the discovery and trial phases of the cases. *Yarema*, 305 Md. at 222-23, 503 A.2d at 240-41. Unlike *Yarema*, and the cases on which that opinion is founded, the present case does not involve the consolidation of "two [or more] entirely separate and distinct cases." *Id.* at 234, 503 A.2d at 247 (quoting *Coppage v. Resolute Insur. Co.*, 264 Md. 261, 263-64, 285 A.2d 626 (1972)). Here, the consolidated cases are what the MDA describes aptly as "flip-sides of the same coin"—the outcome of one of the cases could affect directly the outcome of the other.

Although, technically speaking, WKA and MFB are plaintiffs and the MDA is a common defendant, due to the process by which the cases were filed separately and consolidated eventually, the essence of this dispute is a disagreement between the WKA plaintiffs and MFB plaintiffs in which the MDA is an intermediary in control of the disputed property, i.e., the information regarding certain NMPs. The judge, therefore, must have understood that the adverse parties in this case were in fact the duelists WKA and MFB, and that their claims impacted directly the interests of the other party.

Lastly, the Anne Arundel Circuit Court maintained the WKA action and MFB action on the same docket, whereas the court in *Yarema* maintained separate dockets for

-19-

each individual action. 305 Md. at 223, 503 A.2d at 241. Although this is only a formal distinction, the amalgamation of the two actions into one docket, in addition to the interdependence of the actions and the court's attempt to engage in consideration of the effect of WKA's pending constitutional claim in the same hearing in which it was addressing MFB's statutory non-constitutional claim, lends further weight to our conclusion that the trial court intended clearly to treat the actions as a singular case requiring a single disposition. One may argue that it is contradictory to conclude that the trial court intended to require a single disposition because it issued an order declaring the case "closed," without resolving the constitutional claim. A countervailing supposition may be that the court simply forgot about the pendency of the constitutional claim, when it issued the 2009 Order, after the parties failed to follow up on the court's attempt in the 2008 hearing to address that claim.[20]

Because the two actions required a joint disposition, the finality of that disposition would be conditioned upon a complete adjudication of all of the claims presented by both actions. Here, the MFB Complaint raised one claim, asserting two counts and four

---

[20] We note that the principle of constitutional avoidance does not salvage the failure to dispose of WKA's constitutional claim. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means of choosing between them*." *Clark v. Martinez*, 543 U.S. 371, 385, 125 S. Ct. 716, 726, 160 L. Ed. 2d 734 (2005). No evidence in this record demonstrates that the trial judge considered and avoided an interpretation of the pertinent statute that would raise a constitutional question in favor of a competing interpretation. To the contrary, the court attempted to engage in consideration of a constitutional question—i.e., whether the statute violated the First Amendment—but his attempt was thwarted by WKA's unpreparedness to address that issue when the judge raised it.

prayers for relief, concerning the degree of confidentiality to which the MDA must maintain its records in the face of a PIA request. The WKA Complaint raised an additional claim as to the constitutionality of § 8-801.1(b)(2), the statute upon which MFB based its assertions. The 2009 Order only resolved the claim from the MFB Complaint and did not address the constitutional claim from the WKA Complaint.[21] Consequently, the 2009 Order could not qualify as a final judgment because it did not adjudicate every claim. *Rohrbeck*, 318 Md. at 41, 566 A.2d at 773. MFB's Motion for Clarification of the 2009 Order was not subject to the thirty-day time-limit of Rule 2-535. The Anne Arundel Circuit Court retained the power to revise that Order in its 2011 Order.

---

[21] The 2009 Order does not indicate facially whether MFB's entire claim had been resolved completely. The ruling issued by the judge appears to have disposed only of the request for declaratory judgment, without expressing a decision on the request for injunctive relief. If it were clear that the judge felt that his ruling was sufficient to put the parties out-of-court as to that claim and that he disposed implicitly of the request for injunction, then the failure to express this in the 2009 Order was a procedural error that would leave discretion in the appellate court to treat it as a final judgment. *Cf. Bushey v. Northern Assur. Co. of Am.*, 362 Md. 626, 651, 766 A.2d 598, 611 (2001) (stating that the trial judge's failure to issue certain declarations in the final order amounted to a procedural error, but did not deprive the Court of jurisdiction). If he did not intend to dispose of the request for injunctive relief, then the declarations made in the 2009 Order did not resolve automatically that issue, and would render therefore the 2009 Order, and consequently the 2011 Order, as non-final judgments. *See Falls Road Cmty. Ass'n, Inc. v. Baltimore Cnty.*, 437 Md. 115, 150, 85 A.3d 185, 206 (2014) ("The issuance of a declaratory judgment does not lead ineluctably to ancillary relief, such as an injunction."). Factors such as relative inconvenience and hardship to the parties should be considered prior to resolving a request for injunction, factors not necessary to be considered when deciding whether to enter a declaratory judgment. *See id.* (citing *Beane v. McMullen*, 265 Md. 585, 615-17, 291 A.2d 37 (1972)).

### C. The 2011 Order Was Not an Appealable Judgment.

Having concluded that the 2009 Order was not a final judgment, we turn our attention to whether the 2011 Order was final for purposes of appeal. When MFB submitted the Motion for Clarification of Memorandum Opinion and Order Dated February 10, 2009, the Anne Arundel Circuit Court responded by issuing the 2011 Order, which granted MFB's motion and restated, in a slightly different manner, the conclusions of the 2009 Order. The Circuit Court's language in the 2011 Order regarding the meaning of its prior Order was taken in large part word-for-word from the 2009 Order, with the addition of a sentence to emphasize further the court's conclusion (and an additional paragraph addressing specifically the electronic spreadsheet situation raised by Coastkeeper). The court made no comment about the constitutional claim raised in the WKA complaint, nor did any of the parties attempt to address that claim.

For the reasons discussed above in Part II.B., the 2011 Order cannot constitute a final judgment because the Circuit Court did not resolve WKA's pending constitutional claim.[22] Because the 2011 Order is not a final judgment, we must determine whether that Order was appealable pursuant to one of the exceptions to the final judgment rule.

There are three categorical exceptions to the general rule limiting appeals only from a final judgment: (1) interlocutory orders that are appealable by statute; (2) orders

---

[22] The notion that "closing" the case had any impact on the finality of the 2011 Order is unsupported and inconsistent with Maryland law. Although the court may have intended to close the proceedings with regard to MFB's claim on statutory interpretation, the court could not render a final judgment without disposing of the constitutional claim from WKA's Complaint.

that are appealable by the common-law collateral order doctrine; and (3) orders that adjudicate completely one of multiple claims in an action and are certified (and certifiable) under Rule 2-602(b), or, alternatively, Rule 8-602(e)(1)(C). *Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660, 666 (2005). The first exception may be eliminated quickly in the present case because an interlocutory order resembling the 2011 Order (declaratory judgment on a statutory claim) does not fall within the types of appealable interlocutory orders enumerated in Md. Code (1973, 2013 Repl. Vol.), Courts and Judicial Proceedings Art. § 12-303.

Likewise, the 2011 Order is not appealable as a collateral order. Among other requirements, the collateral order doctrine applies only when the issues resolved in the appealed order do not relate to the merits of the case.[23] *See Ehrlich v. Grove*, 396 Md. 550, 563, 914 A.2d 783, 791 (2007) (quoting *Pittsburgh Corning Corp. v. James*, 353 Md. 657, 660-61, 728 A.2d 210, 211-12 (1999)). In the present case, the interpretation of Agric. § 8-801.1(b)(2), resolved purportedly by the 2011 Order, was tied directly to the merits of the case. Thus, the 2011 Order does not fall within the subset of appealable cases permitted by the collateral order doctrine.

---

[23] A collateral order is one where "the interlocutory order sought to be reviewed: (1) conclusively determines the disputed question; (2) resolves an important issue; (3) resolves an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Pittsburgh Corning v. James*, 353 Md. 657, 660-61, 728 A.2d 210, 211-12 (1999). It is necessary for each of those four elements to be satisfied conjunctively. *Cnty. Comm'rs for St. Mary's Cnty. v. Lacer*, 393 Md. 415, 428, 903 A.2d 378, 386.

The final exception is also of no aid to the parties here, although it appears to be the most pertinent to the case *sub judice*. Rule 2-602(b)(1) permits, in certain circumstances, the trial court to certify for appeal an interlocutory order if it resolves at least one of the claims in a multi-claim action, even when other claims remain unresolved. *See Shenasky v. Gunter*, 339 Md. 636, 638, 664 A.2d 882, 883 (1995); *see also* Md. Rule 2-602(b).[24] Similarly, Rule 8-602(e)(1)(C)[25] allows an appellate court to certify an order before it that is otherwise not a final judgment, but only where the trial court could have exercised discretion under Rule 2-602(b)(1), but did not do so. *Brown & Williamson Tobacco Corp. v. Gress*, 378 Md. 667, 670, 838 A.2d 362, 364 (2003).

The discretionary power to direct entry of final judgment under Rule 2-602(b)(1) is to be used sparingly. *E.g.*, *Smith*, 386 Md. at 24, 871 A.2d at 552 (quoting *Diener*

---

[24] Md. Rule 2-602(b)(1) states:

(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties . . . .

[25] Md. Rule 8-602(e)(1) states:

(e) **Entry of judgment not directed under Rule 2-602.** (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2-602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, *(C) enter a final judgment on its own initiative . . .* (Emphasis added).

*Enters. v. Miller*, 266 Md. 551, 556, 295 A.2d 470, 473 (1972)). Circumstances where an appellate court may certify an order are even more limited because not only is the appellate court limited to scenarios where the trial court could have certified the order, but the appellate court may not supersede the trial court's exercise of discretion where the trial court denies certification expressly. *See Gress*, 378 Md. at 682, 838 A.2d at 371 (holding that an appellate court may not exercise discretion under Rule 8-602(e)(1)(C) if the trial court declines expressly to certify an entry of final judgment under Rule 2-602(b)). Courts that exercise discretion to certify a non-final judgment for appeal "should balance the exigencies of the case before them with the policy against piecemeal appeals and then only allow a separate appeal in the very infrequent harsh case." *Diener Enters.*, 266 Md. at 556, 295 A.2d at 473.

Certification under 2-602(b)(1) requires that: (1) the case must involve at least two distinct claims; (2) the order which is to be certified must dispose of at least one of the claims entirely; (3) there is no just reason to delay immediate appeal of the resolved claim; (4) the case must be of an extraordinary nature that would justify exercising discretion; and (5) the court must make express written notice of certification. *See* Md. Rule 2-602(b)(1); *Schuele*, 412 Md. at 568, 989 A.2d at 218; *Smith*, 386 Md. at 24, 871 A.2d at 552; *Huber*, 347 Md. at 419-20, 701 A.2d at 417; *Diener Enterprises*, 266 Md. at 556, 295 A.2d at 473. As we have stated, the conjunction of all these elements and its relationship to Rule 2-602(a) reinforce the theme of limiting interlocutory appeals and increasing judicial efficiency:

> The purpose of Rule 2-602(a) is to prevent piecemeal appeals, which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems. The appellate court may be faced with having the same issues presented to it multiple times; the parties may be forced to assemble records, file briefs and record extracts, and prepare and appear for oral argument on multiple occasions; resolution of the claims remaining in the trial court may be delayed while the partial appeal proceeds, to the detriment of one or more parties and the orderly operation of the trial court; and partial rulings by the appellate court may do more to confuse than clarify the unresolved issues. That is precisely why Rule 2-602(b) is reserved for the 'infrequent harsh case,' and why the trial judge, who normally has a much better grasp of the situation than an appellate court, is viewed, at least in the first instance, as the "dispatcher."

*Smith*, 386 Md. at 25-26, 871 A.2d at 553 (internal citations omitted).

Although the 2011 Order satisfies the first two elements listed above, this is certainly not a case where there is no just reason to delay appeal of the resolved claim. In fact, there is a very significant reason to defer its appeal – as discussed *supra*, the outcome of the adjudication of the constitutional claim may render moot the judgment on the statutory interpretation claim. Given that the underlying premise of any certified order is that certification would improve judicial efficiency, there exists no reason to consider directing entry of the 2011 Order as a final judgment while WKA's constitutional claim remains pending. Furthermore, choosing not to direct entry of the 2011 Order will not result in a "harsh" outcome for the parties. *Diener Enterprises*, 266 Md. at 556, 295 A.2d at 473. WKA has the opportunity to pursue its claim that Agric. § 8-801.1(b)(2) is unconstitutional, even as construed by the 2011 Order. After adjudication of the constitutional claim and entry of a final judgment, any party would have the right of appeal of either the 2011 Order or the order adjudicating the constitutional question. In any event, there is no hardship imposed on WKA, the

petitioner here, to address first the merits of their outstanding claim in the Anne Arundel

Circuit Court.

Because the 2011 Order is not a final judgment and does not fall within one of the

three categorical exceptions permitting interlocutory appeals, both this Court and the

Court of Special Appeals lack the jurisdiction to review the merits of this case at this

time. Accordingly, we must dismiss this appeal and allow the judicial carousel ride to

resume in the Anne Arundel Circuit Court.

> **APPEAL DISMISSED. JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO DISMISS THE APPEAL AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**