<u>Jennifer Adelakun v. Adeniyi Adelakun</u>, No. 35, September Term, 2024

***PENDENTE LITE* ALIMONY AND CHILD SUPPORT – INTERLOCUTORY ORDER – APPEALABILITY – MD. CODE ANN., CTS. & JUD. PROC. (1974, 2020 Repl. Vol.) § 12-303(3)(v) – ORDER FOR PAYMENT OF MONEY –** Supreme Court of Maryland held that Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 12-303(3)(v), which authorizes appeal of interlocutory orders for payment of money, applies to orders directing payment of money to another person, including orders directing payment of *pendente lite* alimony and child support. Supreme Court concluded that orders denying request for payment of money, including orders denying request for payment of *pendente lite* alimony and child support, are not appealable under CJ § 12-303(3)(v) because such orders do not direct or require party to pay money to another person.

Circuit Court for Howard County
Case No. C-13-FM-23-001251

Argued: April 4, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 35

September Term, 2024

_____

JENNIFER ADELAKUN

v.

ADENIYI ADELAKUN

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.

_____

Filed: July 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case involves an issue of statutory construction concerning whether an appeal of an interlocutory order denying a request for *pendente lite* child support and alimony is authorized under Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 12-303(3)(v).[1] "*Pendente lite*" is Latin for "while the action is pending" and means "[d]uring the proceeding or litigation; in a manner contingent on the outcome of litigation." *Pendente Lite*, Black's Law Dictionary (12th ed. 2024). Generally, *pendente lite* orders are temporary court orders, pertaining to matters such as child support and alimony, issued by a court in a family law case. See, e.g., Frase v. Barnhart, 379 Md. 100, 111, 840 A.2d 114, 120 (2003) (In discussing child access (custody and visitation) orders, this Court stated that "[a] *pendente lite* order is not intended to have long-term effect and therefore focuses on the immediate, rather than on any long-range, interests of the child" and "is subject to modification during the pendency of the action, as current circumstances warrant, and it does not bind the court when it comes to fashioning the ultimate judgment." (Citations omitted)).

In this case, we must determine whether CJ § 12-303(3)(v) authorizes an appeal of an interlocutory order denying a request for *pendente lite* child support and alimony. CJ § 12-303(3)(v) provides that a party may appeal from an interlocutory order entered by a circuit court in a civil case "[f]or the sale, conveyance, or delivery of real or personal

[1]An interlocutory order is an order or ruling made by a court during the course of litigation that is not a final judgment or disposition of all of the claims in the case. See, e.g., In re Karl H., 394 Md. 402, 405 n.3, 906 A.2d 898, 899 n.3 (2006) (This Court noted that "interlocutory" is defined as meaning "[p]rovisional; interim; temporary; not final. Something intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy." (Cleaned up)).

property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court[.]" The issue here is whether an interlocutory order denying a request for *pendente lite* child support and alimony is an order for "the payment of money" under CJ § 12-303(3)(v), making it immediately appealable.

Jennifer Adelakun, Petitioner (hereinafter "Mother"), and Adeniyi Adelakun, Respondent (hereinafter "Father"), were married on August 4, 2016. They have three young children.

Mother filed in the Circuit Court for Howard County a complaint for absolute divorce from Father in which she requested, among other things, primary physical custody and sole legal custody of the couple's three minor children, as well as *pendente lite* child support, permanent child support, *pendente lite* alimony, rehabilitative alimony, and permanent alimony, all retroactive to the date of filing. Father filed a counter-complaint for limited divorce in which he requested primary physical custody and sole legal custody of the children, as well as child support based on the Maryland Child Support Guidelines or an amount above the guidelines if applicable.

A family magistrate in the Circuit Court for Howard County held a *pendente lite* hearing and issued a report and recommendations, finding, among other things, that both parents are capable of earning significant income and can cover their own expenses during the *pendente lite* period, and that neither had demonstrated a credible financial need for *pendente lite* alimony or child support. The circuit court entered an order adopting the magistrate's recommendations and denied Mother's request for *pendente lite* alimony and

child support.

Citing CJ § 12-303, Mother noted an appeal of the circuit court's order. In a reported opinion, the Appellate Court of Maryland dismissed the appeal, holding that an interlocutory order denying *pendente lite* child support and alimony is not appealable as an order for the payment of money pursuant to CJ § 12-303(3)(v). See <u>Adelakun v. Adelakun</u>, 263 Md. App. 356, 378-79, 384, 323 A.3d 499, 512-13, 515 (2024).

Mother filed in this Court a petition for a writ of *certiorari*, raising the issue of whether an order denying *pendente lite* child support and alimony is appealable under CJ § 12-303(3)(v). This Court granted the petition. See <u>Adelakun v. Adelakun</u>, 489 Md. 244, 327 A.3d 111 (2024).

On April 8, 2025, after having held oral argument on April 4, 2025, this Court issued a *per curiam* order affirming the Appellate Court's judgment. See <u>Adelakun v. Adelakun</u>, 490 Md. 201, 203, ___ A.3d ___ (2025). We concluded that the Appellate Court "correctly held that an interlocutory order denying *pendente lite* alimony and child support is not appealable as an order for the payment of money pursuant to CJ § 12-303(3)(v)[.]" <u>Id.</u> at 203, ___ A.3d at ___.

We now explain the basis for our April 8, 2025 order.

## BACKGROUND

Mother and Father were married on August 4, 2016, in Jamaica. They are the parents of three children, a daughter born in December 2018 and twin sons born in September 2019.

**Complaint and Counter-Complaint**

On July 19, 2023, in the circuit court, Mother filed a "Complaint for Absolute Divorce by Mutual Consent."  Mother requested, among other things, that the circuit court grant her primary physical custody and sole legal custody of the children, "child support pursuant to the Maryland Child Support Guidelines retroactively, *pendente lite* and permanently until the Minor Children reach the age of majority[,]" and "alimony, retroactively, *pendente lite*, rehabilitative and permanently[.]"  In the complaint, Mother alleged that she was unemployed and "currently not earning any income" and that she "has had substantial financial difficulties including significant debt acquired during the marriage."  Mother asserted that she required spousal support from Father, and alleged that Father "earns enough to provide spousal support to [Mother], including payment of the mortgage on the Marital Home."

On August 14, 2023, Father filed a "Counter-Complaint for Limited Divorce" requesting, among other things, sole legal and primary physical custody of the children, or alternatively, shared physical custody with Father "being the primary."  Father requested that Mother be ordered to pay child support "in an amount in accordance with the Maryland Child Support Guidelines, or an amount above the guidelines, if applicable."  Father asserted that Mother is a "licensed attorney[,]" "gainfully employed[,]" and "capable of contributing to the support of the minor children."  Father did not request *pendente lite* child support or alimony.

### *Pendente Lite* Hearing

On October 31, 2023, the family magistrate held a *pendente lite* hearing.  At the

hearing, Mother requested "primary custody" of the children, use and possession of the marital home, $8,250 a month from Father, and that Father pay the mortgage and utilities for the marital home and $50,000 in prospective attorney's fees. According to Mother, her request for $8,250 in monthly payments from Father and payment of the marital home mortgage by Father would maintain "the status quo" because prior to the parties' separation, Father had paid the mortgage on the marital home and given her $8,250 a month for household expenses.

Mother testified that she was not currently employed, but earned $520 per month from a daycare center she owned. According to Mother, that was the only income she had at the time. Mother testified that she had an ownership interest in J. Anukem and Associates, a law firm that had "been reorganized to be a consulting firm[.]" According to Mother, she was not currently receiving any income from the firm. Mother testified that she stopped practicing law in December 2021 and became "inactive" as a member of the Maryland Bar.

Mother testified that she had incorporated a business called Innovative Technology Solutions, but had not "done anything with it." According to Mother, she was also previously involved with a company known as Phase 5 Consulting, an IT consulting firm, for which she served as a project manager on a contract and as CEO. Mother testified that she stepped down as CEO of Phase 5 Consulting in June 2023 because "the business incurred a lot of debt and [she] could not keep up with it."

Mother testified that she had transferred Phase 5 Consulting to a person named Kimberly Kight, whom she described as her business partner, and that she was not currently

receiving any income from the business. Mother testified that she has an interest in three investment properties that she owned with Ms. Kight. According to Mother, Ms. Kight managed and paid the expenses on the properties, and she (Mother) did not receive any income from the properties.

Mother testified that, at some point in the past year, Ms. Kight and Ms. Kight's business loaned her "over" $500,000 as "working capital for [her] to try to get J. Anukem and Associates up and running as a consulting firm. And also for living expenses." Mother testified that Ms. Kight made her sign an agreement and that she was expected to pay the loan back. Mother testified that Ms. Kight was currently paying her car note, cell phone bill, "and other expenses[,]" and that none of her personal expenses were being paid for by any of her businesses.

Mother testified that she lived in the marital home with her three children, Ms. Kight, and Ms. Kight's teenage daughter. Mother described the marital home as a 12,000 square-foot home with seven bedrooms, eleven bathrooms, and two kitchens. According to Mother and her counsel, during the marriage, Father had given Mother $8,250 for all of the household expenses and paid the mortgage through his business. Mother testified that the $8,250 payment was "split up[,]" with $2,500 paid directly to Mother, $2,500 to Mother's law firm, and $3,250 to Mother's consulting firm.

Mother testified that she filed a financial statement that accurately reflected her current expenses, income, assets, and liabilities. Mother testified that the expense for a "domestic assistance/housekeeper" listed on the statement was for a housekeeper who came to the home five days a week, and that the family had always had a housekeeper come

to the home during the marriage. Mother testified that she "was told" that Father was paying for the family's health insurance but she had not seen any health insurance cards or confirmation of payment. According to Mother, she had paid the children's tuition expenses in full for the then-current school year and Father had not contributed. Mother testified that she and Father were both liable for a $61,000 tax bill to the Internal Revenue Service ("IRS") as the result of an audit for tax year 2018 and that she had come up with a payment arrangement of $750 per month with the IRS.

Mother testified that her payments to Ms. Kight for the $500,000 loan were approximately $1,450 per month. Mother testified that historically every year the family travels to Jamaica and that they typically take an additional vacation per year. According to Mother, she prepaid for a cruise, which was scheduled for December 2023. Mother testified that she was not able to support herself and her children on her current income.

On cross-examination, Mother acknowledged that, although Ms. Kight and her daughter live in the marital home, Ms. Kight was not paying rent. Mother testified that, in 2022, she received around $103,000 in income from Phase 5 Consulting. Mother also acknowledged that the family's 2021 amended tax returns showed that her law firm had gross receipts in the amount of $955,000 and profit in the amount of $109,000, which she characterized as her salary. In response to a question as to whether she owned "seven properties by tenants with the right of survivorship" with Ms. Kight, Mother acknowledged that she did but testified that she was not receiving any money from the properties.

Father testified that he is a "child adolescent and adult psychiatrist" and owns his own business. Father testified that Mother had filed several protective orders against him,

one of which resulted in his brief incarceration, which had affected his job. Father testified that because he is not an employee, he only earns money when he sees patients. According to Father, his income has been "devastated" and he has lost "almost every single contract" that he had. Father testified he was "down to probation on one" of the contracts and "down" to working about two hours a week on another.

Father testified that the housekeeper also works as the nanny and that he could not afford to pay for either service because of what had happened to him as a result of Mother's actions. Father testified that his business pays the mortgage for the marital home, in the amount of approximately $10,500 per month. Father testified that he pays for the family's health insurance, approximately $2,400 per month, and for the children's extracurricular activities such as soccer and swimming. Father testified that, at the time of the hearing, he owed approximately $454,000 in student loans.

Father testified that it was not accurate that he paid Mother a total of $8,250 per month for household expenses. Rather, according to Father, from March 2020 to Spring 2023, he gave Mother $2,500 per month for household expenses. Father testified that he had paid $3,250 per month toward Phase Five and $2,500 per month toward J. Anukem and Associates. Father testified that he had previously been able to make the payments on a monthly basis because of his prior income.

### Magistrate's Report and Recommendations

On December 6, 2023, the magistrate issued a report and recommendations, recommending, among other things, that the parties be granted *pendente lite* joint legal and shared physical custody of the children and that Mother's requests for *pendente lite* child

support and alimony be denied. The magistrate recommended that "the parties [] each have [*pendente lite*] custody of the children on a week on and week off basis with Sunday as the exchange day" and that "[e]ach party's week of access shall begin on Sunday at 4 p.m. and shall end the following Sunday at 2 p.m.[,]" with the children being in the custody of the nanny, a sitter, or an adult relative between 2 p.m. and 4 p.m. each Sunday. The magistrate recommended that "each party [] be granted [*pendente lite*] exclusive use and possession of the family home during that parent's weekly custodial access with the children[,]" and "each party shall pay for one half of the mortgage and half of the ongoing monthly gas and electric bill on the family home during the [*pendente lite*] period[.]" The magistrate recommended that Mother's request for contribution to attorney fees not be granted at the time.

The magistrate found that, "[i]n 2020 tax forms, [M]other and [F]ather reported on their taxes that [M]other's gross receipts from her law firm were $686K and that they were $955K in tax year 2021." The magistrate found that "Mother's W2 for 2022 from Phase V Consulting, Inc. indicates that she earned $103,749 in that year from that company." The magistrate noted that, "[i]n July 2023, $469K was deposited to [M]other's account[,]" and that Mother said that $450,000 was a loan from Ms. Kight.

The magistrate noted that Mother's testimony about her status as an active lawyer had been inconsistent, finding that "Mother testified both that she became 'inactive' as a lawyer in 2021 and also that she became 'inactive' as a lawyer in 2023." The magistrate found that "Mother turned the company [Phase 5 Consulting] over to Ms. Kight at the same time she filed for divorce." The magistrate also observed that, "[a]lthough [M]other's

- 9 -

friend/business partner, and her child, live in the family home, she pays no rent."

As to Mother's financial status, the magistrate found:

[M]other's statements regarding a complete lack of ongoing income lack[] credibility and [are] not supported by other credible evidence. Mother's testimony regarding her income and employment are contradictory and not credible. The portions of Mother's testimony and evidence that [are] credible do[] not prove by a preponderance of the evidence that she has a [*pendente lite*] financial need.

As to Father's income, the magistrate found:

[F]ather's statements regarding a decrease in income [are] more credible, but also lack[] substantial evidentiary support. Father states that his employment has been affected by the repeated and recent filings for protective and peace orders against him as well as a criminal complaint filed against him for which he was arrested. All of these filings are regarding the strife between [M]other and [F]ather. None of the cases filed against him are proven to have been sustained against him. There is no peace or protective order against him and there is no criminal conviction against him. It is reasonable to believe that his employment has been affected by the recent significant court filings against him.

Having reviewed the testimony and evidence concerning Mother's and Father's income, the magistrate found as follows:

Prior to the initiation of the litigation between the parties, both parties earned substantial income from several business ventures each. They are capable of earning significant income and each able to cover their own expenses during the [*pendente lite*] period. Neither parent has demonstrated a credible financial need for [*pendente lite*] alimony at this point in the litigation. The parties' recent history indicates this case as an above guidelines case regarding child support. Both parties are capable of supporting the children while they are in their custody. The parties should share in the payment of the housing for the benefit of the children but should not exchange child support under current circumstances.

### Exceptions, Exceptions Hearing, and *Pendente Lite* Order

On December 15, 2023, Mother filed exceptions to the magistrate's report and

recommendations. Mother contended that the magistrate "erred by not making a finding as to the parties' respective incomes and the parties' expenses, and [that] she abused her discretion in not awarding [Mother] *pendente lite* alimony and child support." On January 12, 2024, Father filed a response in opposition to the exceptions, requesting that the exceptions be denied.

On February 13, 2024, the circuit court held a hearing on Mother's exceptions. As alleged in the exceptions, Mother's counsel argued that the magistrate erred in failing to award *pendente lite* child support and alimony and not making a finding about the parties' incomes and the family's expenses. Father's counsel argued that the magistrate found that "Mother's statements regarding a complete lack of ongoing income lack[] credibility and [are] not supported by other credible evidence." Father's counsel stated that Mother's amended financial statement indicated that she was paying $6,500 per month for a housekeeper, which "seems a bit excessive" "[i]f you do not have a source of income[.]" Father's counsel pointed out that Mother had also indicated that she had "prepaid the private school preschool tuition for two of the children[,]" which according to Father's counsel cost approximately $52,000. In addition, Father's counsel noted that Mother testified that she had prepaid "for a Disney vacation for the minor children and her" and indicated a monthly expense of $1,200 for vacation, which if this were for the cruise would be a vacation costing a total of $14,000. Father's counsel asserted that "there was ample evidence" before the magistrate that Mother "had ample funds at her disposal, and there was not a *pendente lite* need for child support nor alimony."

After hearing argument from the parties, ruling from the bench, the circuit court

- 11 -

denied Mother's exceptions. On March 4, 2024, the circuit court issued a *pendente lite* order, which adopted the magistrate's recommendation and denied Mother's requests for *pendente lite* child support and *pendente lite* alimony. On March 6, 2024, Mother filed a notice of appeal, stating that she had noted an "interlocutory appeal" of the *pendente lite* order pursuant to CJ § 12-303.

**Opinion of the Appellate Court of Maryland**

On September 26, 2024, the Appellate Court of Maryland dismissed the appeal. See Adelakun, 263 Md. App. at 384, 323 A.3d at 515. The Appellate Court held that CJ § 12-303(3)(v) "unambiguously provides for an appeal from an interlocutory order for 'the payment of money' [and] does not include an appeal from an interlocutory order that denies a request for the payment of money[.]" Id. at 379, 323 A.3d at 513. The Appellate Court concluded that the circuit court's order denying the request for *pendente lite* alimony and child support "was not an order for the payment of money, and Mother's interlocutory appeal is not authorized pursuant to CJ § 12-303(3)(v)." Id. at 379, 323 A.3d at 513.

The Appellate Court explained that, prior to oral argument, it had issued a show cause order directing the parties to address why the appeal should not be dismissed for lack of jurisdiction. Id. at 370, 323 A.3d at 507. Mother had responded that the Court had jurisdiction pursuant to CJ § 12-303(3)(v) as the matter was an "interlocutory appeal" of an order for the payment of money. See id. at 370, 323 A.3d at 507.[2] The Appellate Court

_____

[2]Mother also argued that the Appellate Court had jurisdiction because, pursuant to Maryland Rule 8-602(g)(1)(C), the Court should direct entry of a final, appealable judgment. See Adelakun, 263 Md. App. at 370, 323 A.3d at 507. With respect to Mother's

- 12 -

concluded, however, based on the plain language of CJ § 12-303(3)(v) and case law, that "a party can appeal where the court has ordered a party to pay money[,]" but not where the court has denied a request for payment. Id. at 373, 323 A.3d at 509.

The Appellate Court stated that case law demonstrated that the legislative history of CJ § 12-303 "indicates a legislative intent to allow interlocutory appeals only from those orders for the payment of money which had traditionally been rendered in equity, including orders for alimony, child support, and related counsel fees." Id. at 376, 323 A.3d at 511 (cleaned up). According to the Appellate Court, the "common thread" in case law permitting an appeal of an interlocutory order for the payment of money was that each case involved "an order for a specific sum of money which proceeds directly to the person and for which that individual [was] directly and personally answerable to the court in the event of noncompliance." Id. at 376, 323 A.3d at 511 (cleaned up). The Appellate Court explained that the "distinctive feature" of the type of order that is appealable is that the court can impose the sanction of imprisonment for contempt for violation of the order. Id. at 376, 323 A.3d at 511 (cleaned up). The Appellate Court concluded that "[t]he legislative history of the statute and the appellate courts' interpretation of the statute lead to the

---

argument that the Appellate Court should direct entry of a final, appealable judgment pursuant to Maryland Rule 8-602(g)(1)(C)—an issue not before this Court—the Appellate Court observed that, although it had authority to enter judgment on its own initiative under the Rule "in the appropriate case," case law from this Court has stated that the Court "should be reluctant to do so when the circuit court was not asked to exercise its authority [to enter a final judgment] under Rule 2-602(b)." Id. at 383, 323 A.3d at 515 (cleaned up). The Appellate Court stated that "the parties did not ask the circuit court to exercise its authority under Rule 2-602(b)[,]" and "[u]nder the circumstances," it declined to exercise its discretion "to consider the entry of a final judgment on an order that was not certified as a final judgment by the circuit court." Id. at 383, 323 A.3d at 515 (cleaned up).

conclusion that [CJ] § 12-303(3)(v) provides a right of appeal only from interlocutory orders that require a party to pay a specific sum of money to another person." Id. at 376, 323 A.3d at 511 (footnote omitted).

The Appellate Court explained that "[t]he conclusion that an interlocutory appeal from an order for the payment of money applies only to an order requiring a party to take affirmative action to pay is supported by" this Court's interpretation of the "parallel provision" in CJ § 12-303(3)(v), which provides for an appeal of an order "[f]or the sale, conveyance, or delivery of real or personal property." Id. at 377, 323 A.3d at 511. The Appellate Court stated that this Court has held that, although a party can appeal an order directing a sale of real or personal property, a party cannot appeal "an order refusing to authorize a sale before final decree, or from an order suspending or rescinding an interlocutory order of sale." Id. at 377, 323 A.3d at 511 (cleaned up). The Appellate Court explained that if an order for the sale of property "necessarily entails a requirement that property be sold," then an order for the payment of money under CJ § 12-303(3)(v) "necessarily requires that money be paid" and that each portion of the statutory provision "requires performance of an action for which a person can be held in contempt for failure to comply." Id. at 377, 323 A.3d at 512 (cleaned up).

**Petition for a Writ of *Certiorari***

On October 7, 2024, Mother petitioned for a writ of *certiorari*, raising the following three issues:

1. Is an order denying *pendente lite* child support and alimony appealable under CJ[] § 12-303(3)(v)?

- 14 -

2. Alternatively, is entry of a Rule 8-602(g)(1)(C) judgment appropriate?

3. May a trial court deny *pendente lite* child support and alimony without making findings as to the parties' actual adjusted income?

On November 22, 2024, we granted the petition as to the first question only. See Adelakun, 489 Md. 244, 327 A.3d 111.

## DISCUSSION

### Standard of Review and Statutory Construction

Whether a court has jurisdiction is an issue of law, and we review *de novo* the Appellate Court's conclusion concerning whether or not it had appellate jurisdiction. See Mayor and City Council of Balt. v. ProVen Mgmt., Inc., 472 Md. 642, 664, 248 A.3d 271, 284 (2021) ("The present appeal is a jurisdictional dispute, pertaining solely to conclusions of law respecting jurisdiction. Accordingly, we review *de novo* the [Appellate Court's] conclusion that it had jurisdiction to hear [an] appeal." (Cleaned up)).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." Amaya v. DGS Constr., LLC, 479 Md. 515, 540, 278 A.3d 1216, 1231 (2022) (cleaned up). We have described the pertinent rules of statutory construction as follows:

> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly

- 15 -

used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

Id. at 540-41, 278 A.3d at 1231 (cleaned up). "To ascertain the natural and ordinary meaning of [a] term[], we look to dictionary definitions as a starting point, as it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." Sabisch v. Moyer, 466 Md. 327, 366, 220 A.3d 272, 294 (2019) (cleaned up).

In Wheeling v. Selene Finance LP, 473 Md. 356, 377, 250 A.3d 197, 209 (2021), we stated:

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

(Cleaned up).

### Appellate Jurisdiction and Appealability

"[U]nless constitutionally authorized, appellate jurisdiction is determined entirely by statute, and therefore, a right of appeal only exists to the extent that it has been legislatively granted." ProVen, 472 Md. at 665, 248 A.3d at 284 (cleaned up). Pursuant to CJ § 12-301, generally, a party has a right to appeal only "from a final judgment entered in a civil or criminal case by a circuit court." "The primary rationale is to prevent piecemeal

appeals and to prevent the interruption of ongoing judicial proceedings, in order to promote judicial efficiency and economy." In re M. P., 487 Md. 53, 68, 314 A.3d 348, 356 (2024) (cleaned up).

An order constitutes a final judgment where the following three conditions are satisfied: "(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy; (2) it must adjudicate or complete the adjudication of all claims against all parties; and (3) the clerk must make a proper record of it on the docket." Waterkeeper All., Inc. v. Md. Dep't of Agric., 439 Md. 262, 278, 96 A.3d 105, 114 (2014) (cleaned up). Nevertheless, "[t]here are three categorical exceptions to the general rule limiting appeals only from a final judgment": "(1) interlocutory orders that are appealable by statute; (2) orders that are appealable by the common-law collateral order doctrine; and (3) orders that adjudicate completely one of multiple claims in an action and are certified (and certifiable) under Rule 2-602(b), or, alternatively, Rule 8-602(e)(1)(C)." Id. at 286, 96 A.3d at 119 (citation omitted). The first exception—interlocutory orders that are appealable by statute—involves CJ § 12-303 and whether an order falls "within the types of appealable interlocutory orders" set forth in the statute. Id. at 286, 96 A.3d at 119.

Maryland appellate courts have held that cases involving interlocutory orders for the payment of money in the form of *pendente lite* child support and alimony are appealable. See, e.g., In re Katherine C., 390 Md. 554, 557 & n.4, 890 A.2d 295, 296-97 & n.4 (2006) (This Court stated that the case involved a *pendente lite* child support order requiring the mother to pay $282 per month and noted that, although *pendente lite* orders are not final judgments, "appellate court jurisdiction is appropriate for the interlocutory

appeal of an order for the payment of money" and "is applicable to child support orders[.]" (Cleaned up)); <u>Frey v. Frey</u>, 298 Md. 552, 556, 471 A.2d 705, 707 (1984) (Where the trial court declared an antenuptial agreement void and then ordered the appellant to pay $200 per week in *pendente lite* alimony, this Court stated that "[o]rders for the payment of alimony or child support are not expressly covered by the statute. However, our cases make clear that such orders are orders for the payment of money under [CJ] § 12-303." (Cleaned up)); <u>Bussell v. Bussell</u>, 194 Md. App. 137, 140, 147, 3 A.3d 480, 482, 486 (2010) (Where the trial court entered a *pendente lite* order that, among other things, required the appellant to pay $782 per month in child support and $500 per month in alimony, the Appellate Court stated that "a *pendente lite* order pertaining to payment of alimony or child support is immediately appealable." (Citation omitted)).

### CJ § 12-303(3)(v)

CJ § 12-303 provides in relevant part:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

. . .

(3) An order:

. . .

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court[.]

### CJ § 12-303(3)(v): Plain Language

This Court has not previously addressed whether an interlocutory order denying

- 18 -

*pendente lite* child support or alimony is appealable under CJ § 12-303(3)(v). In construing whether CJ § 12-303(3)(v) authorizes an appeal from an interlocutory order denying *pendente lite* child support or alimony, we apply the well-established rules of statutory construction, beginning with an analysis of the plain meaning of the statutory language at issue. By its plain language, CJ § 12-303(3)(v) authorizes an appeal of an interlocutory order "[f]or . . . the payment of money." In other words, the plain language states that an order for the payment of money is appealable. In contrast, an order that is not for the payment of money, *i.e.*, a denial of an order for the payment of money, is not mentioned as appealable under CJ § 12-303(3)(v).

Mother contends, however, that the word "for" in the phrase "for the payment of money" is ambiguous and has a broader meaning that encompasses both positive and negative determinations and includes "[w]ith respect or regard to; on the part of" the payment of money. Stated otherwise, Mother appears to argue that the word "for" in the phrase "for the payment of money" could mean pertaining to or involving and does not require that, to be appealable under CJ § 12-303(3)(v), an order actually direct the payment of money.

In light of Mother's focus on the word "for," we turn to the "natural and ordinary meaning" of the word. Sabisch, 466 Md. at 366, 220 A.3d at 294 (cleaned up). Merriam-Webster's Dictionary defines "for," as, among other things, a preposition "used as a function word to indicate purpose" and "with respect to: concerning[.]" *For*, Merriam-Webster (2025), https://www.merriam-webster.com/dictionary/for [https://perma.cc/L39S -PADY] (capitalization omitted). The Oxford English Dictionary defines "for," in relevant

part, as meaning "[w]ith a view to; with the object or purpose of; as preparatory to[.]" *For*, Oxford English Dictionary (Oxford University Press 2025), https://www.oed.com/ dictionary/for_prep?tab=meaning_and_use#3987758 [https://perma.cc/634W-METG].

To be sure, the word "for," used as a preposition, has a variety of definitions, some of which have a broader meaning than others. That there may be definitions of the word "for" that have a broader meaning, though, than a definition of the word that would amount to directing payment or providing for payment is not the end of the plain language analysis. Under the rules of statutory construction, "the meaning of the plainest language is controlled by the context in which it appears. . . . [N]ot only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part." Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc., 456 Md. 272, 295, 173 A.3d 549, 562 (2017) (citation omitted).

When CJ § 12-303(3)(v) is read as a whole, it is evident that the word "for" can only be interpreted to mean an order directing the actual payment of money, not the denial of a request for the payment of money. CJ § 12-303(3)(v) authorizes an appeal of an interlocutory order "[f]or the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court[.]" The provision authorizes an interlocutory appeal of an order for the sale, conveyance, or delivery of real personal property or the payment of money. The provision by its plain language does not authorize the appeal of an interlocutory order denying the sale, conveyance, or delivery of real or personal property. It is not possible to read CJ § 12-

303(3)(v) as providing for an appeal of an interlocutory order denying the sale of real or personal property, *i.e.*, an order that does not direct the sale of real or personal property. When read in the context of other language in CJ § 12-303(3)(v), it is clear that an order for the payment of money means an order that directs the payment of money as the provision also refers to an order that directs other actions, such as the sale, conveyance, or delivery of real or personal property. While dictionary definitions of the word "for" may indicate that the word can have a variety of meanings, when read in the context of the phrase "[f]or the sale, conveyance, or delivery of real or personal property or the payment of money" in CJ § 12-303(3)(v), it is plain the word "for" refers to an order directing the payment of money and not an order denying the payment of money.

In addition, the language of CJ § 12-303(3)(v), stating "[f]or . . . the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court[,]" leads to the conclusion that the provision makes appealable only orders directing the payment of money. This language makes clear that an interlocutory order denying a request to rescind an order for the payment of money is immediately appealable unless the payment has been directed to be made to a court receiver. The language demonstrates that orders for the payment of money are orders directing payment to be made. The language would be surplusage or useless if the language for the payment of money were interpreted to mean an order denying the payment of money. See Wheeling, 473 Md. at 376, 250 A.3d at 209 ("[W]e read the plain meaning of the language of the statute as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." (Cleaned up)).

The plain meaning of CJ § 12-303(3)(v)—that only an order directing the payment of money is appealable—is even more clear when considered within the context of other provisions of CJ § 12-303(3). Several provisions of CJ § 12-303(3) refer expressly to circumstances in which a circuit court enters an order declining to take an action, such as where an order refuses or denies some action or relief. For instance, CJ §12-303(3)(iii) provides that an interlocutory appeal is permissible from an order "[r]efusing to grant an injunction[.]" CJ § 12-303(3)(xi) provides that an interlocutory appeal is permissible from an order "[d]enying immunity asserted under § 5-525 or § 5-526 of this article[.]" And, CJ § 12-303(3)(xii) provides that an interlocutory appeal is permissible from an order "[d]enying a motion to dismiss a claim filed under § 5-117 of this article if the motion is based on a defense that the applicable statute of limitations or statute of repose bars the claim and any legislative action reviving the claim is unconstitutional." Where the General Assembly intended in CJ § 12-303(3) to authorize an appeal from an interlocutory order if a circuit court did not order a requested action or denied the requested relief, the General Assembly used words that clearly evidenced its intent.

Mother maintains that CJ § 12-303(3)(v) must be construed in conjunction with Md. Code Ann., Fam. Law (1984, 2019 Repl. Vol.) ("FL") § 12-101(a) and that permitting interlocutory appeals only from orders granting *pendente lite* child support but not orders denying such support "would thwart the General Assembly's intent . . . to impose a presumption of *pendente lite* child support[.]" Nothing in the text of either statute, however, permits us to adopt Mother's position. FL § 12-101(a)(1) provides: "Unless the court finds from the evidence that the amount of the award will produce an inequitable

- 22 -

result, for an initial pleading that requests child support pendente lite, the court shall award child support for a period from the filing of the pleading that requests child support." CJ § 12-303(3) does not contain any reference to FL § 12-101(a) or any provision indicating that an appeal from an interlocutory order with respect to *pendente lite* matters concerning child support or alimony in family law cases is to be handled differently than an appeal from an order for payment of money. In CJ § 12-303(3)(v), the General Assembly chose not to include language referring to an order "refusing" or "denying" the payment of money as appealable, and there is no indication in its language that CJ § 12-303(3)(v) is to be applied differently in cases involving the denial of requests for *pendente lite* payments in family law cases. Rather, reading CJ § 12-303(3) as a whole confirms that CJ § 12-303(3)(v) authorizes an appeal of an interlocutory order directing the payment of money, including an order requiring a party to pay *pendente lite* child support or alimony, but not an order denying such a request.

We conclude that, when read in the context of CJ § 12-303(3)(v), and the entirety of CJ § 12-303(3), the phrase "[f]or. . . the payment of money" is unambiguous and the plain meaning of CJ § 12-303(3)(v) is clear with respect to orders for the payment of money. Under CJ § 12-303(3)(v), orders that direct or require the payment of money are immediately appealable; orders denying requests for payment of money are not. In the absence of any indication that doing so would be consistent with the intent of the General Assembly, we decline to develop or ascribe a different meaning to the phrase "[f]or . . . the payment of money" in the context of *pendente lite* payments to authorize the immediate appeal of an interlocutory order denying the payment of money. Doing so would be to

"add []or delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend . . . the statute's meaning." Amaya, 479 Md. at 540, 278 A.3d at 1231 (citation omitted).

## CJ § 12-303(3)(v): Legislative History

Although the plain language of CJ § 12-303(3)(v) is unambiguous and our analysis could end at this point, we point out that our holding is supported by the circumstance that the legislative history of the provision contains no evidence of an intent by the General Assembly to treat the meaning of the language "[f]or . . . the payment of money" differently in the context of *pendente lite* orders in family law cases or to permit immediate appeals of interlocutory orders denying the payment of money. In Anthony Plumbing of Md., Inc. v. Att'y Gen., 298 Md. 11, 18-20, 467 A.2d 504, 507-09 (1983), and Della Ratta v. Dixon, 47 Md. App. 270, 277-86, 422 A.2d 409, 413-17 (1980), this Court and the Appellate Court, respectively, discussed at length the legislative history of CJ § 12-303 and the phrase "order for . . . the payment of money."[3] We set forth relevant parts of the discussion from both cases here.

At common law, "appeals were allowed only from judgments rendered by courts of law, and then only if the judgments were final ones." Della Ratta, 47 Md. App. at 278, 422 A.2d at 413 (citations omitted); see also Anthony Plumbing, 298 Md. at 18, 467 A.2d at

_____

[3]In Anthony Plumbing, 298 Md. at 18 n.3, 467 A.2d at 508 n.3, we stated: "For an excellent survey of the history of interlocutory appeals in Maryland, and [CJ] § 12-303(c)(5)"—the provision that is now CJ § 12-303(3)(v)—"in particular, *see* Judge Wilner's opinion for the Court of Special Appeals in *Della Ratta*[.]"

508. In 1718, the right to appeal from an equity decree was provided through an Act of Maryland's Provincial Assembly. See Anthony Plumbing, 298 Md. at 19, 467 A.2d at 508. "Neither the Acts of 1718 nor its successors, however, made clear whether an appeal was available only from a final decree or also from an interlocutory order in equity." Id. at 19, 467 A.2d at 508; see also Della Ratta, 47 Md. App. at 279, 422 A.2d at 414 ("The 1721 Act (ch. XIV) accorded the right of appeal to one aggrieved 'by any decree of the Chancery Court . . .,' but it was not entirely clear whether that meant only final decrees, as was supposed by some, or included certain types of interlocutory orders, as was the practice in England." (Ellipses in original)).

In 1830, the General Assembly "attempted to end this confusion" "by eliminating entirely the right to appeal from interlocutory orders and finding another way to deal with the problem." Della Ratta, 47 Md. App. at 280, 422 A.2d at 414. At that time, through chapter 185 of the 1830 Maryland Laws, the General Assembly restricted appeals from equity to final decrees, but added the following "proviso":

> Provided always, that the execution of any decree or order of the chancery, or any county court for the sale, conveyance, or delivery of possession, of real or personal property, or the payment of money, or the bringing of money into court, or the appointment of a receiver, or the opening of any way public or private, from which the right of an immediate appeal is taken away by this act, shall not be suspended or staid, unless a prayer for an appeal be entered on the docket, or filed among the proceedings in the cause, and bond in such penalty as the chancellor, or county courts, (as the case may be) may prescribe, with good and sufficient security, to be approved by the chancellor or county court, shall be given.

Id. at 280, 422 A.2d at 414. The 1830 Act "mark[ed] the first apparent delineation of these special types of interlocutory equity orders—including an order for the payment of

money." Id. at 280, 422 A.2d at 414. The "special treatment" given to such orders, "in lieu of immediate appeal, was to permit the party subject to them to stay their effect in the equity court pending conclusion of the entire case." Id. at 280, 422 A.2d at 414.

In 1841, the General Assembly amended the 1830 Act by authorizing an appeal in equity from certain interlocutory orders, including an order for the payment of money. See Anthony Plumbing, 298 Md. at 19, 467 A.2d at 508; Della Ratta, 47 Md. App. at 280-81, 422 A.2d at 414-15. The 1841 Act provided, in relevant part:

> That so much of the first section of the said act, as takes away the immediate right of appeal from any decree or order of the court of chancery, or any county court sitting as a court of equity, for the sale, conveyance or delivery of real or personal property, or the payment of money, unless such delivery or payment be directed to be made to a receiver, to be appointed by such court, be, and the same is hereby repealed; and that from any such decree or order heretofore passed, or hereafter to be passed, the right of an immediate appeal is hereby given.

Della Ratta, 47 Md. App. at 280-81, 422 A.2d at 414-15. With the 1841 Act, "the General Assembly, for the first time, created specific distinctions among equity decrees for the purpose of appeal[,]" but "[i]n one sense, [] merely reinstituted what had formerly been the practice, based upon the English experience, of allowing appeals from certain types of interlocutory orders but not others." Id. at 281, 422 A.2d at 415. The "real significance" of the 1841 Act was that the General Assembly "was deciding which types of orders could be immediately appealed and which types could not." Id. at 281, 422 A.2d at 415.[4] The

---

[4]The 1841 amendment eliminated the language in the 1830 Act, which allowed for the stay of execution of orders for the payment of money (and conveyances of property, etc.). A stay of an order for the payment of money would only have been necessary under the 1830 Act if an order directing the payment of money had been entered, i.e., a stay of

1841 Act, though, did not change that "appeals from courts of law were still restricted to final judgments only." Anthony Plumbing, 298 Md. at 19, 467 A.2d at 508; see also Della Ratta, 47 Md. App. at 281, 422 A.2d at 415. Section 21 of Article 5 of the 1860 Code similarly provided, in relevant part: "An appeal may also be allowed in the following cases, to wit: . . . from an order for . . . the payment of money[.]" Della Ratta, 47 Md. App. at 281-82, 422 A.2d at 415.

Over the next nearly 100 years, the statutory provision "remained substantially unchanged and intact[.]" Id. at 282, 422 A.2d at 415 (citations omitted). In 1957, the General Assembly recodified the laws relating to judicial proceedings; the statutory right of appeal from interlocutory orders "remained limited to equity orders." Id. at 282, 422 A.2d at 415. In 1962, "an appeal was first authorized from an interlocutory order of a court of law." Anthony Plumbing, 298 Md. at 19, 467 A.2d at 508. The 1962 Act limited such interlocutory appeals, though, to "interlocutory orders with regard to the possession of property with which the action is concerned or with reference to the receipt of or charging of income, interest or dividends therefrom or the refusal to modify, dissolve, or discharge such an order." Id. at 19, 467 A.2d at 508 (cleaned up). "Appeals at law could not be taken

_____

an order denying the payment of money would not have been necessary. The 1841 amendment used the same language as the 1830 Act to describe the orders that the Act applied to, but instead of making orders "for" the payment of money stayable, stated that such orders could be immediately appealed. Although it could be argued that the language of the 1830 Act providing for the stay of an order for the payment (an order directing the payment of money) did not exclude the possibility that an order for the payment of money could also have included an order denying payment for which a stay would not be necessary, it is clear that with the 1841 amendment eliminating the treatment given to orders subject to stay and making those orders appealable, the General Assembly intended to make appealable only orders affirmatively directing the payment of money.

- 27 -

from interlocutory orders concerning the payment of money." Id. at 19, 467 A.2d at 508. Stated otherwise, "in terms of orders for the payment of money, an interlocutory appeal remained available only when such an order emanated from a court of equity." Della Ratta, 47 Md. App. at 282, 422 A.2d at 415.

In 1973, the General Assembly enacted CJ § 12-303 "as part of the general recodification of the statutes relating to the judiciary, [which] combined into one section the existing code provisions regarding interlocutory appeals." Anthony Plumbing, 298 Md. at 19, 467 A.2d at 508. With the recodification, for the first time, "reference was made to interlocutory orders of a 'circuit court' rather than to orders of a 'court of equity.'" Id. at 19, 467 A.2d at 508; see also Della Ratta, 47 Md. App. at 283, 422 A.2d at 416. The Revisor's Note to the 1973 recodification noted that the change recognized "that certain types of traditional equity orders, such as an injunction, could also be obtained from a court of law." Anthony Plumbing, 298 Md. at 19-20, 467 A.2d at 508. The Revisor's Note made clear that "the 1973 revision was not intended to make any substantive alterations in the kinds of interlocutory orders that were appealable prior to a final judgment." Id. at 20, 467 A.2d at 508.

In Anthony Plumbing, 298 Md. at 20, 467 A.2d at 508, we explained that the history of CJ § 12-303 "indicates a legislative intent to allow interlocutory appeals only from those orders for the 'payment of money' which had been traditionally rendered in equity[,]" including "orders for alimony, child support, and related counsel fees[.]" (Citations omitted). We stated that the "common thread" in Maryland case law is that each case "involves an order for a specific sum of money which 'proceeds directly to the person' and

- 28 -

for which that individual is 'directly and personally answerable *to the court* in the event of noncompliance.'" Id. at 20, 467 A.2d at 508 (quoting Della Ratta, 47 Md. App. at 285, 422 A.2d at 417) (emphasis in original). Under those circumstances, "[n]ot only his property, but his very liberty may be at risk; and yet, if the order is later shown to be in error and reversed, he is not necessarily entitled to recover what he has paid." Della Ratta, 47 Md. App. at 285, 422 A.2d at 417 (citation omitted).

A little over a year after Anthony Plumbing, in Simmons v. Perkins, 302 Md. 232, 236, 486 A.2d 1192, 1194 (1985), after reviewing the legislative history of CJ § 12-303 as set forth in Anthony Plumbing and Della Ratta, we explained: "The distinctive feature of the kind of equitable order described in *Anthony Plumbing* is that the court has available to it, among other possible sanctions for a violation of the order, the sanction of imprisonment for contempt." We stated that if "imprisonment for contempt is not available to the trial court for any violation of its order[,]" then the order "is not equitable in nature" such that an interlocutory appeal is authorized under CJ § 12-303. Simmons, 302 Md. at 236, 486 A.2d at 1194.

The legislative history of CJ § 12-303 and the phrase "order for the payment of money" supports our conclusion that CJ § 12-303(3)(v) provides a right of appeal only from interlocutory orders that actually direct a party to pay a specific sum of money to another person and not from orders that do not direct the payment of money. Put simply, the legislative history does not demonstrate an intent on the part of the General Assembly that the phrase "[f]or . . . the payment of money" be broadly read to mean "pertaining to the payment of money" or "concerning the payment of money" such that the statute permits

- 29 -

an appeal from an interlocutory order that denies or declines to grant a request for the payment of money.

For support, Mother relies on the definition of "for" from the 1828 edition of Webster's *American Dictionary of the English Language*, the edition available when the statute was enacted in 1841.[5] We are unpersuaded by Mother's argument that, because the word "for" had broad meanings when the General Assembly enacted the 1841 Act, the General Assembly must have meant to "encompass[] both positive and negative determinations[,]" and that, if the General Assembly "had intended a more restrictive meaning, it certainly could have used a more restrictive term than the word 'for' as it was understood at that time." The 1841 Act introduced the language that exists in CJ § 12-303(3)(v) today and evidenced no intent on the part of the General Assembly that the language apply to orders denying the payment of money or that *pendente lite* orders concerning payment of alimony and child support be treated differently. The 1841 Act explicitly stated that it repealed any aspect of the Act that "takes away the immediate right

---

[5]The 1828 edition of Webster's Dictionary included 31 definitions for the preposition "for," including: (1) "Against; in the place of; as a substitute or equivalent, noting equal value or satisfactory compensation, either in barter and sale, in contract, or in punishment"; (2) "In the place of; instead of; noting substitution of persons, or agency of one in the place of another with equivalent authority"; (3) "In advantage of; *for the* sake of; on account of; that is, towards, noting use, benefit or purpose"; (4) "Conducive to; beneficial to; in favor of"; (5) "Towards the obtaining of; in order to the arrival at or possession of"; (6) "Against; in opposition to; with a tendency to resist and destroy; as a remedy *for* the headache or toothache"; (7) "With respect or regard to; on the part of"; (8) "In favor of; on the part or side of; that is, towards or inclined to"; (9) "With a view to obtain; in order to possess"; and (10) "Towards; with tendency to, or in favor of." *For*, Webster, American Dictionary of the English Language (1828), https://webstersdictionary1828.com/Dictionary/for [https://perma.cc/CR52-TJEM].

of appeal from any decree or order of the court of chancery, or any county court sitting as a court of equity, *for* the sale, conveyance or delivery of real or personal property, or the payment of money unless such delivery or payment be directed to be made to a receiver, to be appointed by such court[.]"

Although in the 1841 Act the General Assembly could have used the word "for" to connote a broad meaning encompassing a negative determination, *i.e.*, an order denying payment, based on various definitions of the word "for" in use at the time, the language of the 1841 Act indicates that the General Assembly intended the word "for" to mean an order directing the payment of money—as the plain language demonstrates. There is no indication in the legislative history of CJ § 12-303 that the General Assembly used "for" in a broad sense to include orders denying the payment of money. More particularly, there is no indication that the General Assembly intended that an order denying a request for *pendente lite* alimony and child support be appealable under CJ § 12-303(3)(v).[6]

## CJ § 12-303(3)(v): Relevant Case Law

Maryland case law confirms that we have held that CJ § 12-303(3)(v) provides a right of appeal only from interlocutory orders that direct a party to pay a specific sum of money to another person and that neither this Court nor the Appellate Court has expanded the meaning of "[f]or . . . the payment of money" to encompass orders that do not direct a

---

[6]Given the plain language of CJ § 12-303(3)(v) and the lack of any indication in its legislative history that the General Assembly intended orders denying the payment of *pendente lite* child support and alimony to be appealable under the provision, we are constrained from reading such intent into the language of the statute. It may be, however, that going forward the General Assembly will elect to consider the matter.

party to pay a specific sum of money. Both this Court and the Appellate Court have held that interlocutory orders for the payment of *pendente lite* child support and alimony are immediately appealable as orders for the payment of money under CJ § 12-303. See Katherine C., 390 Md. at 557 & n.4, 890 A.2d at 296-97 & n.4; Frey, 298 Md. at 556-57, 471 A.2d at 707; Bussell, 194 Md. App. at 140, 147, 3 A.3d at 482, 486. Significantly, in each of those cases, the trial court order at issue directed a party to pay a specific sum of *pendente lite* child support or alimony. See Katherine C., 390 Md. at 557 & n.4, 890 A.2d at 296-97 & n.4; Frey, 298 Md. at 556, 471 A.2d at 707; Bussell, 194 Md. App. at 140, 3 A.3d at 482.

Our holdings in Anthony Plumbing and Simmons demonstrate that this Court has declined to expand the definition of what an "order for the payment of money" means to include an order assessing civil penalties and costs or an order assessing attorney's fees. In Anthony Plumbing, 298 Md. at 14, 21, 467 A.2d at 505, 509, where the trial court had assessed civil penalties against the defendant and awarded the plaintiff the costs of the action, we concluded that an order assessing civil penalties "is not in the nature of an equitable decree" and instead "creates a debt recoverable by an action at law." We determined that an award of costs of an action is "not considered to be equitable in nature, and thus not appealable under" CJ § 12-303. Id. at 22, 467 A.2d at 510. We noted that a portion of the trial court's order that directed the defendant to pay into the court a sum of money to cover costs of additional proceedings was "essentially an award of part of the costs of the action, and should be treated like the other portion of the trial court's order awarding costs[,]" and was not immediately appealable. Id. at 23, 467 A.2d at 510. In

Simmons, 302 Md. at 234 & n.3, 236, 486 A.2d at 1193 & n.3, 1194, where the trial court found the defendant's motion to have been filed without substantial justification and ordered him to pay $150 to plaintiff's counsel, which represented a reasonable fee to plaintiff's counsel for attending court for a hearing on the motion, we determined that the order was "not equitable in nature" and did not "proceed directly to the person so as to make [the defendant] directly and personally answerable to the court for noncompliance."

Our conclusion that an interlocutory appeal from an order for the payment of money means an order that affirmatively directs a party to pay money, and not one that denies or does not grant a request for the payment of money, is also supported by our discussion in Washington City & P.L.R. Co. v. S. Md. R.R. Co., 55 Md. 153, 157 (1880), in which we interpreted Article 5, Section 21 (a precursor of CJ § 12-303) and its language providing for an appeal "from an order for the sale, conveyance, or delivery of real or personal property[.]"[7] In Washington City, 55 Md. at 154-55, the court issued an interlocutory order for the sale of all of the real and personal property of the Southern Maryland Railroad Company but later rescinded the interlocutory order of sale, and Washington City, one of the railroad company's creditors, appealed. We concluded that "the rescission of the interlocutory order of sale furnishes no ground of appeal[,]" as the "order determined no right whatever. It did not establish the claims of the parties upon whose application it was passed; and the Court, in acting upon the application for such order, was in the exercise of a purely discretionary power." Id. at 156. We stated:

---

[7]In Della Ratta, 47 Md. App. at 281, 422 A.2d at 415, the Appellate Court set forth the statutory language of Article 5, Section 21, from the 1860 Code.

> If [the court] had refused to pass the order for sale, it is very clear that no appeal would have lain from such refusal; and having passed the order, if for satisfactory cause subsequently appearing, the order not having been executed, the Court deemed it proper to rescind that order, and thus leave the question of sale to depend upon the final determination of the cause, no person can rightfully complain by way of appeal.

Id.  And, we concluded: "While an appeal will lie from an order directing the sale (*Code, Art. 5, sec. 21*[),] the statute makes no provision for an appeal from an order refusing to authorize a sale before final decree, or from an order suspending or rescinding an interlocutory order of sale."  Id. at 157.

Given that in Washington City, we construed "[f]or the sale, conveyance, or delivery of real or personal property" to not authorize an appeal from an order refusing to authorize a sale or from an order suspending or rescinding a sale, and that the statutory language at issue there immediately precedes "the payment of money," it is logical to conclude that "[f]or . . . the payment of money" does not authorize an appeal from an order refusing to authorize a payment of money.  We also note that, in McLaughlin v. Ward, 240 Md. App. 76, 86, 201 A.3d 19, 24 (2019), the Appellate Court determined that case law demonstrates that an order "'[f]or the sale, conveyance, or delivery of real . . . property' necessarily entails an order requiring that property be sold."  (Alteration and ellipsis in original).

Mother relies on Chappell v. Chappell, 86 Md. 532, 39 A. 984 (1898), as standing for the propositions that interlocutory review of orders allowing or disallowing *pendente lite* support is necessary and that "both spouses must have equal rights to challenge the allowance or disallowance of alimony by interlocutory appeal."  In Chappell, 86 Md. at 536-37, 39 A. at 986, however, referring to appeals from final judgments, we stated:

There can be no doubt whatever that a court of equity has power to allow alimony to a wife pending a suit for divorce; nor can its authority to require the husband to pay her counsel fees and the costs of the proceeding be disputed. These are not now open questions in Maryland. The amount allowed is regulated by the circumstances of each case and is usually said to rest in the chancellor's sound discretion. But it by no means follows that this discretion is never open to review. So far from this being so, it has been held on appeal from the final decree that the amount allowed for alimony may be curtailed. Ricketts v. Ricketts, 4 Gill, 106. And where an allowance was refused upon an application made to the lower court after final decree, and after the record had been transmitted to this court on an appeal from the final decree, it was held that an appeal would lie from such refusal. Rohrback v. Rohrback, 75 Md. 317, 23 Atl. 610. It is not perceived how, if an appeal will lie from an order refusing to allow alimony, none can be entertained from an improvident order making such an allowance. . . . Certainly an order to pay alimony and an order to pay counsel fees are orders to pay money, and from an order to pay money (other than an order to pay money to a receiver) section 25 of article 5 of the Code, in express terms, allows an appeal.

In stating that "[i]t is not perceived how, if an appeal will lie from an order refusing to allow alimony, none can be entertained from an improvident order making such an allowance[,]" Chappell, 86 Md. at 536, 39 A. at 986, this Court was referring not to an appeal from an interlocutory order refusing to allow alimony, but to appeals concerning alimony that occurred after a "final decree," as the citations and discussions of Ricketts and Rohrback indicated.

In Pappas v. Pappas, 287 Md. 455, 462, 413 A.2d 549, 552 (1980), we quoted language from Chappell, stating:

> Orders for the payment of alimony or child support are not expressly covered by the statute. However, our cases make clear that such orders are orders "(f)or . . . the payment of money" under [CJ §] 12-303. For instance, in Chappell . . ., the Court was faced with that very question in construing the predecessor of the present statute. The Court held that such an order was one directing money to be paid within the purview of Code (1888) Art. 5, s 25, the predecessor statute[.]

- 35 -

Both Chappell, 86 Md. at 536, 39 A. at 985-86, and Pappas, 287 Md. at 460-63, 413 A.2d at 551-53, involved an appeal from an interlocutory order to pay alimony, not an interlocutory order denying a request for alimony, and it was in that context that this Court addressed whether the order to pay alimony was an order for the payment of money such that an interlocutory appeal was permissible. In Chappell, 86 Md. at 537, 39 A. at 986, we stated that one of the reasons an appeal from an interlocutory order awarding *pendente lite* support is permissible as an order for the payment of money is that an error in ordering support may result in serious injury to the person ordered to pay.

In sum, Maryland case law supports our determination that an interlocutory order is appealable as an order for the payment of money under CJ § 12-303(3)(v) only if the order actually directs a party to pay money to the other party. Neither this Court nor the Appellate Court has previously concluded that an order denying the payment of money is immediately appealable or interpreted the language of CJ § 12-303(3)(v) to encompass such an order. We decline to do so in this case.

**Additional Thoughts**

Just as a circuit court's order denying a request for *pendente lite* alimony and child support is not appealable under CJ § 12-303(3)(v), an order granting a request for *pendente lite* alimony or child support in an amount less than that requested is not appealable by the party who requested the *pendente lite* alimony or child support. Where a party requests *pendente lite* alimony or child support and the circuit court grants payment of a lesser amount, *i.e.*, not the full amount sought, the part of the circuit court's order denying payment of the full amount requested is not appealable under CJ § 12-303(3)(v).

Permitting an appeal of an order that does not grant the full amount requested would in essence permit the appeal of the denial of the difference between the amount awarded and the amount requested.

As explained above, part of the rationale for permitting a party to appeal an order that directs the party to pay money is that, where a party fails to comply with an order for the payment of money, the circuit court can impose penalties for noncompliance, which may include a finding of contempt and imprisonment. See Simmons, 302 Md. at 236, 486 A.2d at 1194 ("The distinctive feature of the kind of equitable order described in *Anthony Plumbing* is that the court has available to it, among other possible sanctions for a violation of the order, the sanction of imprisonment for contempt."). A party who receives an order partially denying a request for *pendente lite* child support and alimony would be similarly situated to a person whose request for *pendente lite* alimony and child support is denied in its entirety, such as Mother in this case, who is attempting to appeal the denial. Given the plain language of CJ § 12-303(3)(v) and the rationale for permitting interlocutory appeals of orders for the payment of money, there is no logical reason to permit an appeal of an order partially denying payment.[8]

Finally, to the extent that Mother has contended that the denial order in this case is an order for the payment of money because it awarded $0 in *pendente lite* alimony and child support, this argument is not convincing. It likely goes without saying, but a person

---

[8]Under this scenario, the situation remains that the party who is directed to pay *pendente lite* alimony or child support may appeal the order for the payment of money pursuant to CJ § 12-303(3)(v), while the court's order denying full payment is not appealable under CJ § 12-303(3)(v) by the party who sought the payment.

cannot be held in contempt, and potentially subjected to imprisonment, for the failure to pay $0, as there is no financial obligation that must be satisfied. This argument is simply a repackaging of the argument that the phrase "[f]or . . . the payment of money" should be construed broadly to include an order denying payment.

## CONCLUSION

For the reasons discussed herein, in our order of April 8, 2025, we concluded that the Appellate Court "correctly held that an interlocutory order denying *pendente lite* alimony and child support is not appealable as an order for the payment of money pursuant to CJ § 12-303(3)(v)[.]" Adelakun, 490 Md. at 203, ___ A.3d at ___. Because the Appellate Court did not err in dismissing Mother's interlocutory appeal, we affirmed its judgment.